```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

**BLACKOUT SEALCOATING, INC., an** )
**Illinois corporation, KIMBERLY** )
**KOLINEK, an individual, and PAUL** )
**KOLINEK, an individual11** )
                                      )     No. 12 C 4369
    Plaintiffs, )

  v. )

**TERRY PETERSON, Chairman of the** )
**Board of Chicago Transit Authority,** )
**FORREST CLAYPOOL, President of the** )
**Chicago Transit Authority, ALEJANDRO** )
**SILVA, Chairman of Committee on** )
**Finance, Audit, and Budget, MARINA** )
**POPOVIC, Vice-President of hte** )
**Chicago Transit Authority, and the** )
**CHICAGO TRANSIT AUTHORITY, an** )
**Illinois municipal corporation,** )

    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kimberly and Paul Kolinek are the owners of plaintiff Blackout Sealcoating, Inc., a company engaged in the business of asphalt and other construction work. In their First Amended Complaint ("FAC"), plaintiffs claim that defendants deprived them, without due process of law, of their constitutional occupational liberty interest by debarring them from doing business with defendant Chicago Transit Authority ("CTA") for a period of one year. Now before me is defendants' motion to dismiss the FAC, which I grant for the reasons that follow.

I.

According to the complaint, the Kolineks own and operate Blackout, which has been a successful contractor since 1997, and which performed asphalt, concrete, and equipment leasing work for the CTA from approximately 2007, when it was awarded two contracts for this type of work ("CTA contract 552" and "CTA contract 343,") until May of 2012.  Plaintiffs allege that despite Blackout's ongoing satisfactory performance of these contracts, the CTA sent Blackout a Notice of Intent to Debar in September of 2010, then sent an Amended Notice of Intent to Debar in March of 2011. Plaintiffs responded to both of these letters in writing. On May 8, 2012, defendants decided to debar plaintiffs and the following day sent them a letter informing them of that decision.[1]

Plaintiffs' debarment was subsequently posted on the CTA's website, and Blackout's contracts with the CTA terminated.  On June 5, 2012, plaintiffs filed the instant action, claiming that defendants deprived them of their occupational liberty--that is, their right to pursue their chosen occupation--in violation of the due process clause of the Fourteenth Amendment.  Plaintiffs seek both damages and injunctive relief.

---

[1] The FAC includes allegations relating to the substance of these notices, plaintiffs' responses to them, and the debarment proceedings.  I need not address these allegations, however, because their relevance is to the adequacy of the process plaintiffs were allegedly afforded--an issue I do not reach in view of my threshold conclusion that the FAC does not articulate the deprivation of plaintiffs' asserted constitutional right.

II.

A motion to dismiss tests the sufficiency of a complaint, not its merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). I accept all well-pleaded factual allegations as true, and I consider the facts in the light most favorable to the plaintiff. *Id.* Nevertheless, to survive a motion under Rule 12(b)(6), a complaint must present sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A procedural due process claim mandates a two-part analysis. *Pugel v. Board of Trustees of University of Illinois*, 378 F.3d 659, 662 (7th Cir. 2004). I must first determine whether plaintiffs have adequately alleged the deprivation of a liberty interest. *See id.* If they have, I must proceed to examine whether the process they allege was adequate. *Id*.

Plaintiffs do not survive the first hurdle. For the sake of economy, I address only a few of the complaint's many flaws. To begin with, the factual material in the FAC cannot reasonably be read to situate plaintiffs' claims within the narrow class of cases in which state action so thoroughly extinguishes an individual's

3

ability to pursue his or her chosen career as to threaten that person's liberty interest in pursuing an occupation.

The Fourteenth Amendment protects the right of individuals "to engage in any of the common occupations of life." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). But the Constitution's guarantee of what has come to be known as "occupational liberty," is narrow. *D'Acquisto v. Washington*, 640 F. Supp. 594, 608-09 (N.D. Ill. 1986) ("[t]he liberty interest in pursuing an occupation is defined narrowly.") It does not guarantee the right to a specific job, *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992), nor even does it protect against conduct that "causes serious impairment of future employment opportunities." *McMahon v. Kindlarski*, 512 F.3d 983, 988 (7th. Cir. 2008). Indeed, individual occupational liberty is threatened only by conduct that calls into question an individual's "'good name, reputation, honor or integrity' in a way that ma[kes] it 'virtually impossible'" to find employment in one's chosen field. *Id.*

Plaintiffs assert that their debarment "seriously threatens their ability to engage in their chosen profession," FAC at ¶ 5, but the complaint does not substantiate this conclusory statement with the kind of factual material that would raise their right to relief "above the speculative level." *Twombly*, 550 U.S. at 555 (2007). Plaintiffs argue, in response to defendants' motion, that

4

they "have been precluded from all government contracting." But this is a far cry from what the complaint actually alleges. The only contracts plaintiffs claim to have lost as a result of their debarment are CTA Contract 343 and CTA Contract 552. Plaintiffs do not allege that these contracts represented a substantial portion of their overall business, nor do they allege (although they do argue) that they are foreclosed from pursuing contracts with other government agencies. Plaintiffs make the sweeping statement, again in opposition to defendants' motion, that "[m]ost, if not all municipal codes and governing articles require government entities to hire only 'responsible contractors.'" But the complaint does not claim that any such code or article has ever been applied to plaintiffs as a result of their debarment, nor does it allege that plaintiffs have been prevented from bidding on or obtaining any public contract for which plaintiffs were otherwise qualified.

Nor, of course, do the referenced regulations have any bearing on plaintiffs' ability to pursue gainful work in the private sector. Nothing in the complaint suggests that plaintiffs lack opportunities for pursuing their vocation through non-government contracts, or even that plaintiffs' business has traditionally been focused on public-sector work. "[A] court should not simply assume, based on a plaintiff's assertions, that a wide variety of opportunities have been foreclosed." *Townsend v. Vallas*, 256 F.3d

661, 671 (7th Cir. 2001). For all that the complaint reveals, plaintiffs have a robust private clientele, which they continue to service successfully to this day.

In short, the factual allegations in the complaint are insufficient to support plaintiffs' claim that they became "virtually unemployable" in their chosen field as a result of their debarment. Accordingly, they do not state a violation of plaintiffs' constitutional liberty interest.

Even, however, if plaintiffs could, in good faith, amend their complaint to cure the foregoing defects, their claim would be doomed by a second problem: the complaint pleads no publication of stigmatizing information. To plead their claim properly, plaintiffs would have to allege that: "(1) [they were] stigmatized by the defendant's conduct; (2) the stigmatizing information was publicly disclosed; and (3) [they] suffered a tangible loss of other employment opportunities as a result of public disclosure." *McMath v. City of Gary*, 976 F.2d 1026, 1032 (7th Cir. 1992). But here, even if plaintiffs proved every factual allegation in their complaint, they still would not have established the first two elements of their claim.

The allegedly stigmatizing information plaintiffs assert is: 1) the statement, published on the CTA website, that plaintiffs were debarred; and 2) the allegedly false underlying reasons for the debarment, which plaintiffs claim "are contained in the CTA's

6

files."   FAC at ¶¶ 63, 69.  The first statement cannot be stigmatizing because, as all agree, it is true. "True but stigmatizing statements that preclude further government employment do not support" an occupational liberty claim.  *Strasburger v. Board of Educ., Harding County*, 143 F.3d 351, 356 (7th Cir. 1998). And the underlying reasons for the debarment, whatever their truth or falsity, have not, as a matter of law, been publicly disclosed. *McMath*, 976 F.2d at 1035 ("the publication requirement is not satisfied with the mere existence of a 'likelihood of public disclosure.' ...   Information kept within the department...may indeed be a 'ticking time bomb,'... but until the time bomb explodes–i.e., until the information is disseminated–there is no publication and no constitutional tort.") (internal citations omitted).  *McMath* thus forecloses plaintiffs' argument that they have satisfied the second element with allegations that the reasons for their debarment are "contained in the CTA's files."  Indeed, the only case plaintiffs cite for this proposition is *D'Acquisito v. Washington*, 640 F. Supp. 594 (N.D. Ill. 1986), which preceded the Seventh Circuit's decision in *McMath*.

For the foregoing reasons, I conclude that plaintiffs have not stated a violation of their liberty interest.  Accordingly, I need not reach the issue of whether the process they were afforded with respect to their debarment was due.  *See McMahon v. Kinlarski*, 512 F.3d 983, 987-88 (7th Cir. 2008).

III.

For the reasons discussed above, defendants' motion to dismiss the First Amended Complaint is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 21, 2012